**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| SHEMARYEL ESSEX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV. ACT. NO. 2:26-cv-144-TFM-MU |
| | ) | |
| THE PERRY COUNTY COMMISSION, | ) | |
| | ) | |
| Defendant. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Pending before the Court is the *Motion to Remand* (Doc. 11, filed May 7, 2026) in which Plaintiff Shemaryel Essex motions the Court remand this matter to the Circuit Court of Perry County, Alabama. Having considered the motion and memorandum in support, response, reply, sur-reply, and applicable law, the Court finds the motion is due to be **DENIED**.

### I.     PROCEDURAL BACKGROUND

Plaintiff Shemaryel Essex ("Plaintiff") originally filed this action on March 17, 2026, in the Circuit Court of Perry County, Alabama. Doc. 1-1 at 6-12. In Plaintiff's Complaint she brings three (3) claims against Defendant The Perry County Commission, state-law claims of fraud and breach of contract, and a claim for violation of her Fourth and Fourteenth Amendment rights to due process. *Id.*

This matter was removed to this Court on April 17, 2026. Doc. 1. On May 7, 2026, Plaintiff timely filed her instant motion to remand (Doc. 11) and memorandum in support (Doc. 12). Defendant timely filed a response to the motion to remand (Doc. 13), Plaintiff filed a reply (Doc. 14), and Defendant filed a sur-reply (Doc. 18) with the Court's leave (Doc. 17). The motion to remand is fully briefed and ripe for review, and the Court finds oral argument unnecessary to fully resolve the issues that are raised in the motion.

## II.    STANDARD OF REVIEW

Federal courts have a strict duty to exercise jurisdiction conferred on them by Congress. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996). However, federal courts are courts of limited jurisdiction and possess only that power authorized by the Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). The removing party has the burden of establishing federal jurisdiction. *See Leonard v. Enter. Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002) (citing *Williams v. Best Buy Co.*, 269 F.3d 1316, 1318 (11th Cir. 2001)). Further, the federal removal statutes must be construed narrowly and doubts about removal must be resolved in favor of remand. *Allen v. Christenberry*, 327 F.3d 1290, 1293 (11th Cir. 2003) (citing *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996)); *Burns*, 31 F.3d at 1095 (citations omitted).

A defendant has thirty (30) days after service of the initial pleading to remove a case. 28 U.S.C. § 1446(b)(1). However, in cases where the initial pleading is not removable, "a notice of removal may be filed within thirty days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

## III.    DISCUSSION AND ANALYSIS

Plaintiff argues the Court lacks subject matter jurisdiction over this matter because the Perry County Commission is an arm of the State of Alabama and the Eleventh Amendment divests

federal courts of jurisdiction to hear cases in which a private citizen seeks to impose a liability that will be paid from state public funds, as Plaintiff seeks here.  Doc. 12 at 2-3.

In response, Defendant argues municipal corporations and counties are not arms of the state for purposes of Eleventh Amendment immunity as stated by the Supreme Court of the United States in *Galette v. New Jersey Transit Corp.*, 607 U.S. --, 146 S. Ct. 854 (2026).  Doc. 13 at 1. Defendant also argues the absolute immunity that is granted to State entities by the Alabama Constitution and, if Defendant is an arm of the State as Plaintiff argues, this case would be subject to dismissal for lack of subject matter jurisdiction regardless of the forum.  *Id.* at 2.

In reply, Plaintiff argues *Galette* was decided based on the laws of New York, New Jersey, and Pennsylvania, and not Alabama law, and the Alabama Constitution does not prohibit certain causes of action against the State.  Doc. 14.

In sur-reply, Defendant argues again *Galette* directly held subordinate political subdivision of a state, such as counties and cities, are not considered arms of the state for purposes of the Eleventh Amendment and Plaintiff has failed to cite any authority that states counties in Alabama, or its governing commission, are an arm of the state.  Doc. 18 at 2-3.

> A State's immunity from suit is a "fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today."  *Alden v. Maine*, 527 U.S. 706, 713, 119 S. Ct. 2240, 144 L. Ed. 2d 636 (1999).  State sovereign immunity bars private parties from suing a nonconsenting State in that State's own courts or in the courts of another State.  *See Franchise Tax Bd. of Cal. v. Hyatt*, 587 U.S. 230, 249, 139 S. Ct. 1485, 203 L. Ed. 2d 768 (2019). In so doing, it prevents "the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties."  *In re Ayers*, 123 U.S. 443, 505, 8 S. Ct. 164, 31 L. Ed. 216 (1887).  It also protects the State from "being thrust . . . against its will, into the disfavored status of a debtor, subject to the power of private citizens to levy on its treasury."  *Alden*, 527 U.S. at 749, 119 S. Ct. 2240.
>
> Sovereign immunity, however, is " 'personal' " to the State itself.  *College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.*, 527 U.S. 666, 675, 119 S. Ct. 2219, 144 L. Ed. 2d 605 (1999).  It does not extend to "lesser entities," such as "municipal corporation[s] or other governmental entit[ies]" that are not "arm[s]

of the State." *Alden*, 527 U.S. at 756, 119 S. Ct. 2240.  Whether an entity is "an arm of the State . . . is a question of federal law" that "can be answered only after considering the provisions of state law that define the agency's character." *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429, n.5, 117 S. Ct. 900, 137 L. Ed. 2d 55 (1997).

*Galette*, 146 S. Ct. at 865.

The Supreme Court described its arm-of-the-State inquiry in *Galette*:

The clearest evidence that a State has created a legally separate entity is that it created a corporation with the traditional corporate powers to sue and be sued, hold property, make contracts, and incur debt.  *See* [*Bank of U.S. v.*] *Planters' Bank* [*of Ga.*], 9 Wheat. [904,] 907–908 [(1824)]; *Lincoln County* [*v. Luning*], 133 U.S. [529,] 530–531, 10 S. Ct. 363 [(1890)]; *Hess* [*v. Port Auth. Trans-Hudson Corp.*], 513 U.S. [30,] 44–45, 115 S. Ct. 394 [(1994)].  The corporate form is particularly salient because it has "long [been] settled as a matter of American corporate law that separately incorporated organizations are separate legal units with distinct legal rights and obligations." *Agency for Int'l Development v. Alliance for Open Society Int'l, Inc.*, 591 U.S. 430, 435, 140 S. Ct. 2082, 207 L. Ed. 2d 654 (2020).  Indeed, "[s]eparate legal personality has been described as 'an almost indispensable aspect of the public corporation.'"  *First Nat. City Bank v. Banco Para el Comercio Exterior de Cuba*, 462 U.S. 611, 625, 103 S. Ct. 2591, 77 L. Ed. 2d 46 (1983).

. . .

The corporate form, however, is not the only structure that signals the State has created a legally separate entity.  Other aspects of state law may indicate legal separateness as well.  Most obviously, the entity could be described as a "'separate legal entity.'"  *Lake Country* [*Estates, Inc. v. Tahoe Reg'l Plan. Agency*], 440 U.S. [391,] 401, 99 S. Ct. 1171 [(1979)].  State law also might define the entity as not part of the State for other purposes.  *See Moor* [*v. Alameda County*], 411 U.S. [693,] 719, 93 S. Ct. 1785 [(1973)] (state law defined county as a "'local public entity'" instead of the "State" for purposes of suits against public entities).  The ultimate question remains whether the State structured the entity as part of itself or as legally independent.

The Court's precedents also focus on whether the entity is liable for its own judgments or whether the State is formally liable, *i.e.*, whether "any judgment" against the entity "must be satisfied out of the state treasury." *Hess*, 513 U.S. at 51, 115 S. Ct. 394; *Planters' Bank*, 9 Wheat., at 907, *see also Regents*, 519 U.S. at 430, 117 S. Ct. 900.  One of the central "underlying rationales for state sovereign immunity" is protecting States' "ability to make [their] own decisions about 'the allocation of scarce resources.'" *Lewis v. Clarke*, 581 U.S. 155, 167, 137 S. Ct. 1285, 197 L. Ed. 2d 631 (2017) (quoting *Alden*, 527 U.S. at 751, 119 S. Ct. 2240). If the State is formally liable for judgments against an entity, that entity is more

likely to be an arm of the State because its liabilities necessarily undermine the State's ability to make choices about how to allocate the State fisc.

In contrast to formal legal liability, an entity's practical financial relationship with the State, such as its expectation that the State would cover its judgments if needed, has less relevance.   Just as a State cannot lose its sovereign immunity by "requir[ing] a third party to reimburse it" (such as by buying insurance), *Regents*, 519 U.S. at 431, 117 S. Ct. 900, a State cannot imbue an entity with its immunity simply by agreeing to "pick up the tab" (such as by choosing to indemnify the entity), *Lewis*, 581 U.S. at 165, 137 S. Ct. 1285.  Similarly, a State's history of subsidizing an entity carries little weight.  State governments routinely fund nonprofits, private corporations, and municipalities, but the receipt of those state funds does not mean that those entities become part of the State itself, even when the funding is a "significant amount," *Mt. Healthy* [*City Bd. of Ed. v. Doyle*], 429 U.S. [274,] 280, 97 S. Ct. 568 [(1977)].

Finally, the Court's cases also suggest that courts may consider the degree of control the State exerts over the entity, but courts should do so with caution.  Control is not especially probative because "ultimate control of every state-created entity resides with the State," even those that are not arms of the State.  *Hess*, 513 U.S. at 47, 115 S. Ct. 394.  Cities, counties, school boards, and state-created banks have all been recognized as legally separate entities from the States, even though "the State may destroy or reshape any" of these entities that "it create[d]."   *Ibid.*   Further, "[g]auging actual control . . . can be a 'perilous inquiry'" and "'an uncertain and unreliable exercise.'"  *Ibid*. (quoting Note, 92 COLUM. L. REV. 1243, 1284 (1992)).  That is because the State might exercise control through various formal and informal levers, from appointing and removing officers, to directing projects or vetoing actions, to monitoring day-to-day operations, all of which are difficult to weigh against one another individually, let alone when assessing them in different combinations.

*Id.* at 868-69.

In Alabama, "[e]very county is a body corporate, with power to sue or be sued in any court of record."  ALA. CODE § 11-1-2.  County commissions have the authority to "direct, control, and maintain the property of the county as [they] may deem expedient according to law," "levy a general tax, for general county purposes and a special tax, for special purposes," and "examine settle, and allow all accounts and claims chargeable against the county," among other powers and duties delegated to it by law.  § 11-3-11.  Based on the arm-of-the-State inquiry in *Galette*, Defendant is not an arm of Alabama.

Indeed, the Supreme Court has acknowledged "the firmly established rule that municipal corporations and counties are not arms of the State" and "the arm-of-the-State inquiry [asks] whether an entity is 'more like a county or city' than 'like an arm of the state.'" *Galette*, 146 S. Ct. at 867 (citing *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274 (1977)).

Therefore, Defendant is not immune from suit based on the Eleventh Amendment, and the Court has subject matter jurisdiction of this action based on Plaintiff's Fourth and Fourteenth Amendment due process claims. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

### IV.    CONCLUSION

Accordingly, the Motion to Remand (Doc. 11) is **DENIED**.

**DONE** and **ORDERED** this 8th day of June 2026.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE